THE CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY

v.

SIMON R. CLARK.

1. MASTER AND SERVANT—INJURIES TO SERVANT.—An employee assumes all the ordinary hazards arising from the performance of the duties of his voluntary engagement, and if he is injured by any of the ordinary perils of the service, the law will afford him no remedy.

2. RAILROADS—LESSOR AND LESSEE—RELATION OF SERVANTS OF THE LATTER TO THE FORMER.—Where a railroad company leases of another company its track, the trains of the lessee being allowed to run over such track subject to the control, rules and orders of the lessor, by virtue of an agreement to that effect between the two companies, the lessor will be regarded as the common master of the servants of the lessee while running its trains upon the leased track, and the employees of the two companies as fellow servants of the lessor.

APPEAL from the Circuit Court of Adams county; the Hon. JOSEPH SIBLEY, Judge, presiding.

Mr. O. H. BROWNING, for appellant; that the allegations and proofs must correspond, cited Blackburn v. Thompson, 15 East. 81; 1 Chitty's Pl. 375; Hullman v. Bennet, 5 Esp. 226; Ill. Cent. R. R. Co. v. Middlesworth, 43 Ill. 64; Tracy v. Rogers, 69 Ill. 662; Guest v. Reynolds, 68 Ill. 488; Ill. Cent. R. R. Co. v. McKee, 43 Ill. 119; Quincy Coal Co. v. Hood, 77 Ill. 68; Hacket v. Smelsby, 77 Ill. 109; C. C. & I. C. R. R. Co. v. Troesch, 68

C. B. & Q. R. R. Co. v. Clark.

Ill. 548; T. W. & W. R. R. Co. v. Jones, 76 Ill. 311; I. B. & W. R. R. Co. v. Rhodes, 76 Ill. 285.

To constitute a tort there must be actual or legal damage to the plaintiff, and a wrongful act or omission of the defendant: 1 Addison on Torts, 2; Harkins v. Standard Sugar Refinery, 122 Mass. 400.

The injury of which plaintiff complains must be the result of the negligence of the defendant; the proof shows it was caused by the wrongful act of the servants of another road: Lesher v. Wabash Nav. Co. 14 Ill. 85; Hinde v. Wabash Nav. Co. 15 Ill. 72; C. St. P. & F. DuLac R. R. Co. v. McCarthy, 20 Ill. 385; O. & M. R. R. Co. v. Dunbar, 20 Ill. 623; Ill. Cent. R. R. Co. v. Finnigan, 21 Ill. 648; C. & R. I. R. R. Co. v. Whipple, 22 Ill. 106; Ill. Cent. R. R. Co. v. Kanouse, 39 Ill. 272; T. P. & W. R. R. Co. v. Rumbold, 40 Ill. 143; Railroad Co. v. Barron, 5 Wall. 90.

It being shown that proper regulations had been adopted for the running of trains, the presumption was that the act was in violation of those rules and the company not liable: P. Ft. W. & C. R. R. Co. v. Powers, 74 Ill. 341.

A recovery cannot be had where the injury was caused by the negligence of a fellow servant: Wright v. N. Y. C. R. R. Co. 25 N. Y. 568; Rose v. Boston, etc. R. R. Co. 58 N. Y. 217; Ill. Cent. R. R. Co. v. Cox, 21 Ill. 20; C. & A. R. R. Co. v. Keefe, 47 Ill. 108; C. & A. R. R. Co. v. Murphy, 53 Ill. 339; C. B. & Q. R. R. Co. v. Gregory, 58 Ill. 272; C. C. & I. C. R. R. Co. v. Troesch, 68 Ill. 548; T. W. & W. R. R. Co. v. Moore, 77 Ill. 217; T. W. & W. R. R. Co. v. Durkin, 76 Ill. 398.

Plaintiff had knowledge of the manner of running trains over the leased track, and he cannot recover for an injury arising from a danger to which he voluntarily exposed himself: Woodley v. Metropolitan R'y Co. 2 Law Times Rep. 384; I. B. & W. R. R. Co. v. Flanigan, 77 Ill. 365; C. & N. W. R. R. Co. v. Ward, 61 Ill. 130; Gunderson v. Peterson, 65 Ill. 193; Harkins v. Standard Sugar Refinery, 122 Mass. 400.

Damages must be the natural result of the act done: 1 Chitty's Pl. 410; Sedgwick on Damages, 82; Clark v. Brown, 18 Wend. 229; 3 Parsons on Contracts, 178; T. W. & W. R.

R. Co. v. Muthersbaugh, 71 Ill. 572; Bosch v. B. & M. R. R.
Co. 44 Iowa, 402; Lowery v. W. U. Tel. Co. 60 N. Y. 198;
Hoey v. Felton, 11 C. B. (N. S.) 142.

Messrs. WHEAT & BONNEY, for appellee; that the plaintiff
was not a fellow servant with the employees of the leased road,
and that defendant was liable, cited Swainson v. Northwestern
R'y Co. 3 L. T. Rep. 102; Voss v. Lancanshire, etc. R'y Co.
27 L. J. 249; Warburton v. Great Western R'y Co. 15 L. T.
Rep. (N. S.) 361; Valtez v. O. & M. R. R. Co. Sup. Ct. Ill.
June T. 1877; C. & A. R. R. Co. v. Murphy, 53 Ill. 339; Smith
v. N. Y. & H. R. R. Co. 19 N. Y. 127; Catawissa R. R. Co. v.
Armstrong, 49 Pa. St. 186.

The company leasing the road will be liable: Lesher v.
Wabash Nav. Co. 14 Ill. 85; Hinde v. Wabash Nav. Co. 15
Ill. 72; C. St. P. & F. DuLuc. R. R. Co .v. McCarthy, 20 Ill.
385; O. & M. R. R. Co. v. Dunbar, 20 Ill. 623; C. & R. I. R.
R. Co. v. Whipple, 22 Ill. 106; Ill. Cent. R. R. Co. v. Finni-
gan, 21 Ill. 648; Ill. Cent. R. R. Co. v. Kanouse, 39 Ill. 272;
T. P. & W. R. R. Co. v. Rumbold, 40 Ill. 143; P. & R. I. R.
R. Co. v. Lane, Sup. Ct. Ill. 1877; Vt. & Canada R. R. Co. v.
Nelson, 26 Vt. 717; Bemen v. Rufford, 6 Eng. L. & Eq. 106;
Great Northern R'y Co. v. Eastern C. R. R. Co. 12 Eng. L. &
Eq. 225; Norwich v. B. & L. R. R. Co. 12 Eng. L. & Eq. 506.

DAVIS, J.    This action was brought by appellee to recover
damages for injuries received by him in a collision of trains,
on appellant's road, January 1, 1877.

Appellee recovered a judgment below for $3,900, to reverse
which this appeal is taken.

Appellee was a locomotive engineer, in the service of appel-
lant, and on the day of the accident was running an engine
with a passenger train attached, over appellant's road, between
Camp Point and Quincy.    At the same time, a wild or extra
freight train belonging to the Toledo, Wabash & Western Rail-
way Co., was running over the same road, between Quincy and
Camp Point, and about 9:50 P. M. the two trains collided, in-
juring appellee very seriously.

Appellant's road, between Camp Point and Quincy, had been used continually as one road, jointly by the two companies, since 1859, under a lease from the Chicago, Burlington & Quincy Railroad Company, and by the arrangement existing between the two roads, the time table of appellant governed all trains between Quincy and Camp Point, and it was made the duty of all conductors to run by such time table. The rules adopted for the government of trains running over that part of appellant's road between those points, were that conductors should await the arrival of an incoming train before another of the same class should go out; that inferior trains should wait for superior trains indefinitely; that a wild train had no business upon the road, except upon an order from the dispatcher of appellant's road, and that first-class trains had rights over all inferior trains.

The accident was not caused by any fault of the appellee, or of any of the employees of appellant in charge of the passenger train, but was solely the result of negligence on the part of Gage, the conductor of the wild train of the Wabash road. By the time table of the C. B. &. Q., the passenger train was entitled to the right of way, and was within a few minutes of being on time, and was due in Quincy at 9:45 P. M.; but was entitled to the right of way for twelve hours longer.

The wild train had run into Quincy from Camp Point about 7:30 P. M., and was to return the same evening, but it was made the duty of the conductor of that train by such time table, to await the arrival of the passenger train. Of this duty and of all the information imparted by the time table, one of which was in his possession, he was fully aware, but for some unexplained reason, instead of waiting for the arrival of the passenger train, he left Quincy a few minutes before it was due, and collided with it within five minutes after leaving.

Appellee entered the service of appellant as a locomotive engineer in 1859, and served as such until 1867, when he quit such service. From January, 1872, until September of the same year, he was in the employ of the Toledo, Wabash and Western Railway Company, and during that time ran over the road of the Chicago, Burlington and Quincy Company between

Quincy and Camp Point, and was governed between those two places by the time table of appellant. He again entered the service of appellant in September, 1872, and knew when he did so that the Toledo, Wabash and Western Railway Company habitually ran its trains over the road of the C. B. & Q., and that it was governed by the time table of appellant whilst upon the road. Upon these facts, as shown by the record, it is clear that the relation which existed between the appellant and the Toledo, Wabash and Western Railway Company as to that part of appellant's road between Camp Point and Quincy, was that of lessor and lessee, and the C. B. & Q., as lessor, would undoubtedly be liable for all injuries done on its road to those not connected with the trains and employees of the Toledo, Wabash and Western Railway Company, its lessee. But in this case the question to be determined is, what relation did Gage, the conductor of the Wabash train, sustain to the C. B. and Q. road, and to the appellee at the time of the collision? Was he a servant of the appellant and fellow servant of appellee, or was he a servant of the Wabash road?

The same track being used by the two companies, a due regard for the safety of the traveling public and the proper dispatch of business, required that one of the two should have the sole control and government of all trains running over it, and to that end the agreement entered into between the two roads in 1859, permitted the Wabash to run its trains over the C. B. and Q. Road on the time-table of the latter, and subject to the orders, rules and regulations, and under the sole control of the C. B. and Q., and although the employees of the Wabash road were engaged and paid by that company, yet from the time they entered with their trains upon, and while they remained on the road of appellant, the management and control of such trains and employees passed to and devolved upon the C. B. and Q. road, and it became liable for all damages which might result from injury caused by the negligence or misman-agement of the same. We think appellant must be regarded as the common master of appellee and of Gage, the Wabash conductor. Both were under the orders and control of appel-lant, so far as the road was operated between Quincy and Camp Point.

In the operation of that portion of appellant's road, appellee and Gage were fellow servants; both controlled and directed by a common head, and required to obey a common will. The Wabash road had no charge of, or control over, the wild train while on appellant's road, and the employees in charge, were as to the management of such train the servants of, and subject to, the orders of appellant alone. Gage, as the conductor of the wild train, and appellee as engineer of the passenger train, knew what their respective duties were, and what and whose orders they were required to obey. They both knew it was their duty to serve and obey the orders of the C. B. and Q. and that they were under the control and management of the same master while running between Camp Point and Quincy; and while they were acting under common orders and in the discharge of common duties the accident occurred.

We think also that the accident in which appellee was injured, was one of the ordinary hazards of the engagement which he voluntarily entered into with appellant.

When appellee re-entered the service of appellant, in September, 1872, he knew his engagement would require him to run his trains over the same road, to and from the same points, under the control and management of the C. B. and Q. road. He had been in the service of the two roads in the discharge of the same duties at different times, and was thoroughly acquainted with what his duties were, and what were the duties of the Wabash employees while on appellant's road. He knew the hazards connected with the duty of his employment to pass the trains of the T. W. & W. road over the same track for the distance between Quincy and Camp Point, and was ignorant of no duty or risk attached to the position which he sought. He then with a full knowledge of all the facts and all the risks connected with his employment, voluntarily entered the service of appellant, and remained in such service for about five years, discharging the same duties, and exposed to the same hazards, until the unfortunate accident occurred out of which this litigation has grown.

The rule seems well established, that an employee assumes all ordinary hazards arising from the performance of the

duties of his voluntary engagement, and if he is injured by any of the ordinary perils of the service, the law will afford him no remedy.   C. & N. W. R. R. Co. v. Ward, 61 Ill. 131; I. B. & W. R. R. Co. v. Flannigan, 77 Ill. 365.

The judgment of the court below must be reversed.

                                                    Judgment reversed.

Mr. O. H. Browning, for appellant.

Messrs. Wheat & Bonney, for appellee.