## John H. Engel, Appellee, v. Frank Parmalee Company, Ap= pellant.

## Gen. No. 16,108.

1. CONTRIBUTORY NEGLIGENCE—*effect of violation of ordinance.* A person receiving personal injuries while in the act of or about to violate a municipal ordinance is not thereby precluded from recovering against one whose negligence caused his injury if such violation did not contribute to his injury and did not consist of an act or intention directed against the person guilty of the negligent conduct.

2. CONTRIBUTORY NEGLIGENCE—*when effect of violation of ordinance does not present question of law.* It must be left to the jury to say in a personal injury suit whether an actual violation of a law or ordinance on the part of the plaintiff is negligence proximately causing or contributing to the injury unless the evidence leaves it impossible for reasonable men to come to a different conclusion.

3. CONTRIBUTORY NEGLIGENCE—*when custom competent upon question of.* A custom may not be competent as bearing upon negligence charged against the defendant, and yet be competent if it tends to show whether the plaintiff at the time of his injury was in the exercise of ordinary care for his own safety.

4. VERDICTS—*when not disturbed as against the evidence.* A verdict will not be set aside as against the evidence unless clearly and manifestly so.

5. INSTRUCTIONS—*when upon negligence invades province of jury.* An instruction which tells the jury what fact or facts would or would not constitute negligence is improper in that it invades the province of the jury.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the HON. ARTHUR H. CHETLAIN, Judge, presiding. Heard in this court at the October term, 1909. Affirmed. Opinion filed April 1, 1912.

LACKNER, BUTZ & MILLER and WILLIS G. SHOCKEY, for appellant.

JAMES C. McSHANE, for appellee.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

The plaintiff in this case, John H. Engel, June 26, 1909, recovered a judgment against the defendant corporation, the Frank Parmalee Company, in the Superior Court of Cook county for $2000. This judgment the defendant corporation seeks to reverse in this appeal. The judgment was obtained on the verdict of a jury in a personal injury case. The appellant maintains as its first contention that the court below erred in not directing the jury, as requested at the close of all the evidence, to return a verdict for the defendant. It asserts that the evidence had clearly shown that the

plaintiff was guilty of negligence which proximately contributed to the injury, and also that at the time of the accident he was engaged in a violation of law which contributed to the injury. On each of these grounds, appellant contends, a peremptory instruction should have been given.

The appellant makes the further contentions that the verdict was manifestly against the weight of the evidence and that the Court erred in instructing the jury and in the admission of evidence.

The injury to the plaintiff, on which the suit was brought, occurred at about ten o'clock in the evening of October 17, 1907. The plaintiff was standing at the edge of the sidewalk in front of the Union Railroad Station on Canal street in Chicago, when an omnibus belonging to and run by the defendant company in its business, backed up to the curb without warning and caught his right foot and ankle between the iron step and cover at the rear end of the omnibus and a stone step on the outer edge of the sidewalk, rising about a foot and a half above the level of the sidewalk and about a foot long.

Both bones of the leg were broken. The plaintiff was taken to a hospital, where he remained a month and where the leg was set and placed in a plaster cast. After three weeks the first cast was removed and a second substituted, which remained on for several weeks. After this was removed the plaintiff was obliged in walking to use crutches or canes, he says, for about a year, and the flesh wound did not entirely heal until the end of that time. The fracture and the reunion have left a slight permanent deformity and a slight limitation of the motion of the ankle, and the plaintiff complains of discomfort in the joint. No contention is made, nor could well be, that the verdict is excessive for the injury suffered.

Ordinarily, whether such an accident was the result of negligence for which the omnibus company, through

its driver, was liable, and whether the plaintiff was himself guilty of negligence so proximately contributing to the injury as to prevent his recovery, even if the defendant was guilty also of negligence, would be . questions for a jury.

The contention of the defendant that they were not so in this case is based on the following reasoning. At the time of the accident the plaintiff was acting as a runner for a hotel (called The Golden Star) opposite the station. There was in force an ordinance of the city of Chicago which after defining a "runner" as one who solicited patronage or custom for certain business enterprises (including hotels) "on any railroad train or other place in the City," provided that no person should be permitted to engage in the business of or act as a runner unless he should have obtained a license to do so. The ordinance further provided that such license could only be issued on application and after a "Board of Inspectors of Public Vehicles" should have found and reported to the Mayor that the applicant was honest, sober and capable and fit to be licensed. Another section provided that a person licensed as a runner should at all times wear a prescribed badge and that not more than one licensed runner should be permitted to ask or solicit business at railroad depots, etc., for any particular person or corporation engaged in any business for which such custom or patronage was being solicited by licensed runners.

The final section of the ordinance provided a penalty for any person who should solicit custom for any hotel (or for any other of the business enterprises mentioned in the first section) without having first secured a license.

For the year 1907 "The Golden Star" had procured a license for a person other than the plaintiff, and that person was at the time of the accident in the employ of The Golden Star and acting as a runner for it. Not

only did the plaintiff have no license, but he could not have obtained one. He was disqualified because The Golden Star could have but one licensed runner.

The plaintiff, just before his injury, went from "The Golden Star" to the station entrance to solicit patronage for that hotel, stood in the gutter, because runners were not allowed on the sidewalk, and at the time his leg was struck was gazing into the entrance of the station looking for prospective customers to come out of the door. As a runner he was compelled to keep off the sidewalk and stand in the gutter, where omnibuses were likely to back up at any minute. If he had not been violating the law by acting as a runner, he never would have been in'the gutter and therefore never would have been struck. Therefore his violation of the law contributed directly and proximately to the injury, and this prevents his recovery, irrespective of his own negligence or that of the defendant; or at least, from another point of view, his being at the station illegally acting as a runner was in itself conclusive evidence of negligence on his part contributing to the accident.

We think this reasoning more ingenious and plausible than sound. The plaintiff testified indeed that at the time of the injury he had gone from his hotel to the station with the intention of soliciting custom, · but he was not soliciting at the time, and his intention to violate the ordinance did not render him a trespasser on the street or in the gutter or on the sidewalk. He had a right as a citizen to be in either place, subject, of course, to such necessary police regulations and supervision as prevent one person from using his ordinary rights in the street to the injury of the equal rights of others. The custom of the police officers on duty at the station to compel persons actually soliciting or known or supposed to intend to solicit, to stand with at least one foot off the sidewalk, may have been necessary, expedient and justifiable. If so, and it was

enforced against the plaintiff, any effect on his rights in this case would seem to us to be favorable to him rather than the reverse, in showing that his position, to the extent of not being entirely on the sidewalk out of harm's way, was not to be attributed to him for negligence. We cannot assent to a theory that he had no right to be near the station at all, nor that his admitted prior violations of the ordinance and his admitted intention to violate it again if he had the opportunity, deprived him at the time of the injury of his civil rights as against a party against whom he was not individually offending even when he was actually in the act of violation.

What the Supreme Judicial Court of Massachusetts said in Moran v. Dickinson, 204 Mass. 559, may be said properly in this case,—the bodily presence of the plaintiff at the place of injury was an essential condition of his injury, but it does not follow that it must have been a cause thereof. We do not think it nor his intending to violate an ordinance was a proximate or contributing cause of it. And we do not think that the question of the plaintiff's negligence in standing in that particular position and location was affected by the fact that it was his intention thereafter at or near that point to do something which, without a license, was illegal, and for doing which he might have been fined. It may have been affected by that customary police regulation—no part of the ordinance involved—that made him and all persons known to be of his class stand off the sidewalk; but if it were, it was so affected favorably to him.

But even if the intended violation of the ordinance might be considered as bearing on his rights as against the defendant, or on his alleged contributory negligence, it would be still a question for the jury. It must be left to them to say in a personal injury suit whether an actual violation of a law or ordinance on the part of plaintiff or defendant is or is not negligence proxi-

mately causing or contributing to the injury, unless the evidence leaves it impossible for reasonable men to come to different conclusions. Heiting v. C. R. I. & P. Ry. Co., 252 Ill. 466.

We hold that there was no error in refusing to take the case from the jury by a peremptory instruction.

Both the alleged primary negligence of the defendant's servant and the alleged contributory negligence of the plaintiff were properly left to the jury.

Nor do we think that the verdict was clearly and manifestly against the weight of the evidence. It would not be useful for us to discuss the testimony in detail. The questions arising on it were simply those which have been so often declared of fact rather than law—as to the amount of care required and that exercised on each side. The jury were, we think, carefully and fully instructed as to the law relating to these conditions, and their verdict means that under all the circumstances the accident complained of was caused by the negligent default of the driver of the omnibus in the amount of care due from him, and that no want of ordinary care for his own safety or to avoid the accident on the part of the plaintiff contributed to the injury. We see no reason to disturb that conclusion.

It is maintained, however, by the appellant that the trial Court erred in allowing the introduction of incompetent testimony.

A cab driver named Bell, who was nearby at the time of the accident, testified that he had seen the plaintiff standing at the step immediately before the accident; that after his (the witness') attention had been distracted for a minute he looked around again and saw that in the meantime the omnibus had backed in against the plaintiff and crushed his leg. He also testified, without objection, that "runners" were accustomed to stand in the street close up to the sidewalk. He was then asked, "What was the custom as long as you were there, whether the Parmalee 'bus men called

or did not call out to those men there?'' Over objection
and a motion to strike out the testimony, the witness'
answer that it was the custom to warn them was al-
lowed to stand.

The plaintiff himself testified: ''The custom was
that when a 'bus driver was backing up his 'bus he
generally hollered 'Look out there,' or some other
remark, and the runners would get out of the way.''
This was in answer in a question which confined the
inquiry to ''a year prior to the accident.''

This evidence as to a ''custom'' under the circum-
stances might be of doubtful competency (although
this is not clear in view of conflicting decisions) if the
matter involved had been only on the defendant's neg-
ligence, but it was at least competent on the subjects
of the plaintiff's ''ordinary care'' and ''contributory
negligence.'' The usual and customary action of the
'bus drivers at that point bore directly on those mat-
ters. If defendant wished an instruction limiting the
effect of this evidence, he should have asked it. Coun-
sel for defendant in their reply argument say that we
are asked by plaintiff to hold ''that because certain
of defendant's drivers usually did what it is claimed
ordinary care required, therefore plaintiff is relieved
of the duty to exercise that care which the law would
otherwise require of him.'' We do not think so. The
plaintiff, we think, had prima facie a right to be stand-
ing where he was standing without being charged with
want of ordinary care. The practice, of which he
knew, for omnibuses to back up there may have taken
away that prima facie right. Proof that omnibuses
were backing up there frequently was competent evi-
dence *tending* to show carelessness on his part. But
the usual accompaniments of that customary ''backing
up'' were as proper subjects of proof as the ''backing
up'' itself.

Finally, it is maintained that the Court erred in its
instructions to the jury. We have examined the in-

structions together, and think the jury were fairly and fully instructed.

The modification of instruction No. 22 as tendered was proper, and the instructions tendered by the defendant and refused were, in our opinion, so far as they were not covered by those which were given, subject to the objection that they took from the jury what, under the circumstances of this case, were questions for them—namely, what facts would show negligence on the part of the omnibus driver and what facts show contributory negligence on the part of the plaintiff.

"It is for the jury to determine from the evidence whether one or both of the parties may have been negligent in their conduct, and not for the court to take the question from them and declare if certain facts exist negligence is established." Myers v. I. & St. L. Ry. Co., 113 Ill. 386, p. 388.

"What particular facts amounted to an exercise of ordinary care or what particular facts amounted to a want of ordinary care, it was for the jury and not for the Court to determine." Chicago v. McLean, 133 Ill. 148, p. 155.

The judgment of the Superior Court is affirmed.

*Affirmed.*